*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-208

OCTOBER TERM, 2014

| | |
|---|---|
| In re H.B., Juvenile | } APPEALED FROM:<br>}<br>} Superior Court, Bennington Unit,<br>} Family Division<br>}<br>} DOCKET NO. 54-4-12 Bnjv |

Trial Judge: David Howard

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in daughter H.B. He argues that the court erred in concluding that termination of his rights was in H.B.'s best interests. We affirm.

H.B. was born in November 1996. In mid-2012, H.B. admitted to the allegations in a delinquency petition. Around the same time, the Department for Children and Families (DCF) filed a petition alleging that H.B. was a child in need of care or supervision (CHINS) because she was beyond her parents' control. H.B. was in father's custody at the time; mother was not involved in H.B.'s life. H.B. was placed in DCF custody. DCF subsequently dismissed the CHINS petition, and the delinquency case proceeded to disposition. In December 2012, an adult friend was awarded legal custody of H.B. In the spring of 2013, DCF obtained custody of H.B. Parents did not participate in making a plan for H.B., nor did they contact DCF to check on H.B.'s wellbeing. Father was in jail at the time, and mother was living in Massachusetts to avoid Vermont arrest warrants. In January 2014, DCF moved to terminate both parents' rights. Following a hearing, the court granted DCF's request.

The court found as follows. Father has been incarcerated for much of H.B.'s life due to convictions for aggravated domestic assault, violations of a relief from abuse order, and other crimes. While he was incarcerated, father had no meaningful contact with H.B. and he did not play a positive role in her life. When father was released from jail in 2011, he sought and obtained custody of H.B. for a short period. H.B. remained in father's custody for several months before father sought a CHINS petition. The court found that while father made some positive efforts during this short period, he had no real relationship with H.B.

H.B. visited with father while in DCF custody, but the visits did not go well. Father was subsequently arrested and charged with numerous crimes, including aggravated domestic assault and aggravated sexual assault. At the time of the termination hearing, father was incarcerated and awaiting trial. Father had been incarcerated for approximately eleven of the eighteen months that H.B. had been in DCF custody. Father and H.B. had had essentially no contact since father's arrest, and H.B. did not desire any contact.

The court found that father made no progress in meeting the initial goals of the disposition plan. Father admitted making mistakes that rendered him unavailable to H.B. for most of her lifetime. In father's view, however, there was no reason to terminate his rights because H.B. could remain in her foster home regardless of whether his rights were terminated. Father believed that the TPR was filed to provide a financial benefit to H.B.'s foster mother. The court noted that the foster mother would probably be better off financially if father's rights were not terminated.

The court found that H.B. was doing well in her foster placement. She was very attached to her foster family and well-adjusted to her community and school. H.B.'s foster mother sought to adopt H.B. if possible.

Based on these and numerous other findings, the court concluded that termination of father's rights was in H.B.'s best interests. The court reiterated that father had played essentially no role in H.B.'s life, and it concluded that father would not be able to assume any parental role within a reasonable period. The court explained that father would be incarcerated at least until his current charges were resolved and father's history suggested that he would be unable to remain out of jail for any length of time. Meanwhile, H.B. was doing very well in her foster placement, and through her foster family, she had finally become part of a community. Although H.B. was seventeen, she had a right to permanency and a good family environment, and her foster parents sought to adopt her. After her difficult life, the court found that this plan and result was clearly in H.B.'s best interest. Granting the petition, the court continued, would provide H.B. with the permanency she needed. In reaching its decision, the court noted father's argument that this was purely a financial issue for the foster family and that "nothing would change" if the petition was denied. The court found that this argument further demonstrated father's lack of understanding that H.B. needed permanency and not just a place to live. Additionally, father's belief that the TPR petition was an unwarranted attack on his parental rights ignored that it was not just his rights that were at stake, but how he had exercised them and what course of action was in H.B.'s best interests. Father appealed from the court's termination order.

As we have often repeated, the court must consider four statutory factors in assessing what course of action is in a child's best interests. 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

Father first suggests that the court failed to properly focus its analysis on H.B.'s best interests. As support for this argument, he cites the court's statement that it was not only father's rights that were at stake, but how he exercised those rights and what course of action was in H.B.'s best interests.

We find no error. Obviously, the question of father's parental rights was at issue in that DCF was seeking to have those rights terminated. The question of how father exercised those rights has a direct bearing on the statutory best-interest factors. In any event, it is evident that the court applied the appropriate statutory standard in reaching its decision and focused on H.B.'s best interests. Indeed, we note that father does not challenge any of the court's findings, including its findings that he played no constructive role in H.B.'s life and that he would not be

2

able to parent H.B. within a reasonable period of time. The court's findings amply support its conclusion that termination of father's rights was in H.B.'s best interests.

Father next complains that the court's decision rests on an assumption that termination of his rights would ensure that H.B. had permanency in her current foster home. Father states that this assumption is misplaced because, upon termination of his rights, DCF retained authority to change H.B.'s placement at any time. We find this argument without merit. H.B.'s foster mother testified that she sought to adopt H.B., and a DCF caseworker testified that H.B. sought the permanency and stability that would accompany such adoption. The court was not unjustified in observing that termination of father's rights would achieve permanency for H.B. We emphasize, moreover, as we have in the past, that the termination of parental rights is not dependent on a child's placement options. See In re D.H., 2014 VT 38, ¶ 31, 97 A.3d 882.

Finally, father asserts that the court erred in responding to his argument that the TPR was filed to provide a financial benefit to H.B.'s foster mother. According to father, if H.B.'s foster mother would be better off financially by not adopting H.B., then the TPR petition should not have been granted because H.B. would benefit from the increased financial support. We reject this argument. The statutory best-interest standard does not include any evaluation of the financial benefits conferred by adoption as opposed to continued foster care. The court based its decision on the appropriate statutory factors, and we find no error.

Affirmed. The mandate shall issue on the date of this entry order.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3